**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**ST. THOMAS/ST. JOHN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **CRIMINAL ACTION** |
| | **:** | |
| **v.** | **:** | **NO. 3:25-2** |
| | **:** | |
| **CALVERT WHITE, BENJAMIN** | **:** | |
| **HENDRICKS** | **:** | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                 **November 14, 2025**

The Grand Jury charged former Virgin Islands Department of Sports, Parks, and Recreation Commissioner Calvert White and local businessperson Benjamin Hendricks with honest services wire fraud and bribery concerning programs receiving federal funds. The jury found St. Thomas residents Commissioner White and Businessperson Hendricks guilty on both counts after trial.

They now move for a new trial or acquittal of their convictions for honest services wire fraud. They argue we erred in answering any part of Jury Question 3 during deliberations about whether there is a common knowledge as to whether WhatsApp and text messaging along with phone calls using servers outside the Virgin Islands constitute a wire transaction in interstate commerce. They objected then, and again now, to us answering any part of Jury Question 3 as commenting on the facts. We disagreed then and now finding Jury Question 3 included a question of law. We told the jury we would not comment on the facts relating to common knowledge as to the location of servers. But we could not ignore the question of law as to a wire transaction in interstate commerce. So, we instructed the jury as to the general definition of wire fraud in response to Jury Question 3.

Commissioner White and Businessperson Hendricks also now argue the United States did not adduce sufficient evidence of an interstate wire transfer to allow a conviction. We disagree. The United States adduced overwhelming uncontradicted evidence of a wire transfer from Puerto Rico to St. Thomas in furtherance of the illegal conduct charged by the Grand Jury. We find no basis to hold a new trial or acquit either man on the honest services wire fraud count. We deny Commissioner White's and Businessperson Hendricks's motions.

## I.    Adduced trial evidence

The Grand Jury charged Commissioner Calvert White and Businessperson Benjamin Hendricks with honest services wire fraud and bribery concerning programs receiving federal funds.[1] The Grand Jury listed a series of phone calls, text messages, and WhatsApp messages, along with a $5,000 wire transfer, as constituting the wire fraud. The United States needed to adduce evidence allowing the jury to find three elements beyond a reasonable doubt: "(1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of . . . interstate wire communications in furtherance of the scheme."[2] "[A] scheme or artifice to deprive another of the intangible right of honest services" falls within the definition of wire fraud.[3] The United States sought to prove Commissioner White and Businessperson Hendricks schemed to defraud the Virgin Islands and its citizens of the intangible right to Commissioner White's honest services as a government official.[4]

### *The United States' evidence of conduct over the wires.*

The United States adduced overwhelming evidence of Commissioner White and Businessperson Hendricks using several forms of electronic communications: they routinely communicated among themselves and with cooperating witness David Whitaker through WhatsApp and text messaging along with phone calls; and Commissioner White, acting through

Businessperson Hendricks, procured a $5,000 bribe paid by David Whitaker through a wire transfer from a Puerto Rico bank in exchange for helping Mr. Whitaker's company, Mon Ethos, win a bid to install security cameras on government property. The jury reviewed several exhibits with Commissioner White, Businessperson Hendricks, and Mr. Whitaker communicating over electronic means while all three remained in St. Thomas. The United States did not claim the demonstrated phone calls, texts, and WhatsApp messaging involved communications between different states and territories.

But the $5,000 bribe came from a wire transfer from Puerto Rico. The United States adduced testimony from bank manager Herbert Vega-Lopez to establish the bribe involved the use of interstate wire communications.[5] Bank manager Vega-Lopez testified he served as manager of the international department at First Bank Puerto Rico.[6] He testified he supervises wire transfers for First Bank's customers.[7] Bank manager Vega-Lopez swore First Bank does not have servers in the Virgin Islands, and all transactions processed by First Bank must pass through servers in Puerto Rico.[8] The United States introduced into evidence a wire confirmation of a $5,000 transfer from Mon Ethos to A Clean Environment USVI, a company owned and operated by Mr. Hendricks.[9] Bank manager Vega-Lopez recognized the transaction as one First Bank had processed, testifying the payment passed through servers in Puerto Rico.[10]

Commissioner White's counsel cross-examined Bank manager Vega-Lopez.[11] He adduced the wire confirmation listed the reason for the payment as "partial payment of contract" and asked Bank manager Vega-Lopez if he knew the meaning of the reference.[12] He answered he did not.[13] Commissioner White's counsel also asked him if he had a way of knowing whether Clean Environment worked for Mon Ethos.[14] Bank manager Vega-Lopez again testified he did not.[15] Businessperson Hendricks's counsel declined to cross-examine Bank manager Vega-Lopez.[16]

We held an extensive charging conference on the third day of trial. We addressed and resolved concerns. We finalized the jury instructions to read to the jury following closing arguments.

### *Jury first asked about the need for interstate commerce for the wire fraud proofs.*

We delivered jury instructions (and provided a written copy as requested in Jury Question 1) covering several topics including what counts as evidence, the presumption of innocence, and the elements the United States needed to prove in each count.[17] The jury asked us the same day in Jury Question 2, "Please look at page 23 – the third element. What does interstate commerce mean please? Thank you."[18] We turned to page 23 of the jury instructions and discussed with counsel before bringing the jury back into the courtroom. We determined the jury asked us to clarify whether interstate communication included communication between territories.[19] Counsel for both Commissioner White and Businessperson Hendricks agreed with our understanding of Jury Question 2 and our plan to instruct communication which crosses territorial borders falls within the definition of interstate communication.[20] We instructed the jury, "Interstate commerce includes commerce between one State, Territory, Possession, or the District of Columbia and another State, Territory, Possession, or the District of Columbia. I think that was your question. If there is some other question, what does interstate commerce mean, please, that's what 'interstate commerce' means set by the United States Congress. That's what they mean when they say[,] 'interstate commerce.'"[21] The jury then adjourned for the evening.

### *Jury asks about text messages, WhatsApp messages, and phone calls in Question 3.*

The jury returned on the fourth day of trial with Jury Question 3: "Is it common knowledge that text messages, WhatsApp, or phone calls between individuals in the U.S. Virgin Islands use networks, systems, or servers outside the U.S. Virgin Islands, and constitute a wire transaction in

interstate commerce?"[22] We again conferred with counsel before welcoming the jury back into the courtroom. The United States first responded we should refer the jury to the testimony already presented but not "go much further."[23] Commissioner White's counsel asked we not answer the entire Jury Question 3 because it constituted a question of fact the jury should decide.[24] Businessperson Hendricks's counsel agreed.[25] We saw it differently. We asked counsel for their view on whether Jury Question 3 also raised a legal question concerning the definition of wire fraud.[26]

We knew of Jury Question 2 already confirming the need for an interstate connection between the territories relating generally to wire fraud. So, we already answered the interstate question the day before. We concluded Jury Question 3 posed a fact question concerning whether there is a "common knowledge" about the use of messaging devices with servers in the Virgin Islands but also asked a legal question about wire fraud. We found we needed to answer the legal question to alleviate juror confusion about the nature of the messages and phone calls.[27]

We relied (and detailed our citations and analysis to counsel) on our Court of Appeals' decision in *United States v. Andrews* and our Delaware colleague's decision in *United States v. Higgins* in reaching our conclusion.[28] In *Andrews*, our Court of Appeals suggested whether a communication constitutes a "wire" under Section 1343 presents a question of law.[29] It did so by categorizing fax and email as "wire communications" under Section 1343.[30] Judge Noreika in *Higgins* cited *Andrews* in holding "telephone, internet, text messages, email, [and] other similar means of communication" constitute wire communications under the statute.[31] Both decisions instruct whether a communication method is a "wire" is a question of law. We understood, given Jury Question 2, the jury did not again ask us to define "interstate."[32]

We broke Jury Question 3 into two parts: (1) the legal question of what forms of communication may constitute interstate wire communication under Section 1343 and (2) the factual question of whether it is "common knowledge" messages sent and phone calls made in the Virgin Islands use servers outside of the Virgin Islands.[33] We concluded we could answer the first question considering *Andrews* and *Higgins* but not the second. The United States upon reviewing Jury Question 3 agreed and argued the jury asked both factual and legal questions.[34]

### *Defendants object to answering any part of Jury Question 3 relating to text and WhatsApp messages and phone calls.*

Commissioner White and Businessperson Hendricks objected to answering any part of Jury Question 3. They argued Jury Question 3 posed a purely factual question.[35] Commissioner White's counsel stated, "They are asking us, is it a fact that text messages and WhatsApp are interstate commerce. . . . That's a fact question."[36] And he also stated, "That is what they are asking, Judge" in response to our suggestion the jury sought clarification on the definition of wire fraud (a purely legal question).[37] Neither Defendants' counsel mentioned the issue of whether the specific transaction crossed territorial lines as a question of fact. They argued instead Jury Question 3 in its entirety posed a fact question. We attempted to answer Jury Question 3 to the extent it asked what forms of communication can constitute interstate wire communications. We declined, however, to address the fact-based issue of common knowledge.[38]

We welcomed the jury back into the courtroom.[39] We responded to Jury Question 3: "Ladies and Gentlemen, you are presenting a question of both a fact and law. As I mentioned to you yesterday, I don't get involve[d] in questions of fact. That's entirely in your province. You decide as to questions of fact. However, there is a question of law built into this as well, and I want to read to you what the question of law, I believe, is. Use of the telephone, internet, text messages, email, or other similar means of communication qualifies as interstate wire communications under

the act. That addresses – that's the legal question posed at least by this statement. I cannot answer the fact question that's raised here. That's something you have to decide, not us."[40]

We offered nothing further and specifically did not mention the inter-territory nexus, "common knowledge[,]" or location of servers. We also did not address, because the jury did not ask about it in Jury Question 3, the form of wire communication charged by the Grand Jury in paragraph 38 of the Indictment (a *bank transfer* of $5,000 from Puerto Rico to St. Thomas).[41] We asked counsel for further objections.[42] They offered no further objection. The jury recessed after our instruction. It later returned a guilty verdict for Commissioner White and Businessperson Hendricks.

### *We held oral argument on Commissioner White's motion for acquittal or new trial.*

Commissioner White timely moved for an acquittal or new trial on the honest services wire fraud charge.[43] Businessperson Hendricks joined his motion.[44] We welcomed extensive oral argument. Commissioner White's counsel clarified his preserved objection we should not have answered Jury Question 3 in any part, as he viewed the entire question asked for us to decide as a fact question. He argued we invaded the province of the jury by answering any part of Jury Question 3 inquiring about the text messages and phone calls. We asked Commissioner White's counsel and the United States if Judge Noreika wrongly decided *Higgins* as to the definition of interstate wire communications. The United States responded no. Commissioner White's counsel thought Judge Noreika may have failed to look at one aspect of *Andrews* but did not say Judge Noreika wrongly decided *Higgins*. The United States argued we acted properly in clarifying the definition of wire fraud for the jury.

The United States offered an alternative should we find (absent the exigencies of a jury waiting for our response in the Courtroom) Jury Question 3 did not include an issue of law. It

suggested if we today found error in answering any part of Jury Question 3 it would nevertheless be harmless considering the unimpeached testimony of Bank manager Vega-Lopez as to the $5,000 wire from Puerto Rico to St. Thomas. We asked Commissioner White's counsel if our jury instruction would be harmless error considering Bank manager Vega-Lopez's testimony on the jurisdictional element. He declined to comment on the sufficiency of Bank manager Vega-Lopez's testimony. Businessperson Hendricks's counsel declined to give specific remarks beyond agreeing with the statements of Commissioner White's counsel.

## II.    Analysis

Commissioner White and Businessperson Hendricks move for a new trial or a renewed judgment of acquittal on convictions for wire fraud. They also assert the United States failed to adduce sufficient evidence to support the interstate element of wire fraud. Rule 29 is not the proper vehicle for them to challenge our response to Jury Question 3.[45] So, we only consider their sufficiency of the evidence argument under Rule 29. We deny a new trial and acquittal on the honest services wire fraud charge as we find no error in finding a question of law in Jury Question 3, we offered a narrow response to the jury, and even if we erred based on our review of the caselaw, the United States adduced overwhelming evidence of interstate wire fraud through the uncontradicted testimony of Bank manager Vega-Lopez.

### A.  We narrowly addressed the question of law raised in Jury Question 3 relating to wire communications.

Commissioner White and Businessperson Hendricks objected to answering any part of Jury Question 3 as invading the jury's province.[46] We disagreed then in the courtroom. We disagree today after the benefit of repeated review of the question and caselaw. We properly found Jury Question 3 included a question of law for us to answer.[47] Whether an issue presents a question of law is for the trial court to determine.[48] As our Court of Appeals has recognized, "[a] party is

entitled to a jury instruction that accurately and fairly sets forth the current status of the law."[49]

And "[i]t is the responsibility of the trial judge to provide the jury with a clear and accurate

statement of the law."[50]

Jury Question 3 included a question of law. The jury sought clarification on whether certain

communications would "constitute a wire transaction in interstate commerce" and whether the

answer to such question was "common knowledge."[51] The first part, which sought clarification on

a statutory definition, raised a legal issue.[52] The second part asked us to comment on whether the

answer to the first part was "common knowledge." The "common knowledge" component would

have required us to make a factual determination, which we could not do. So, we took care to

inform the jury we could not answer the factual issues raised by their question, seeking only to

clarify the definition of wire fraud in line with our understanding of the guidance offered in

*Andrews* and *Higgins*. We attempted to discharge our obligation to clarify legal issues for the jury

in doing so.

### B. We deny acquittal finding the United States adduced substantial evidence for a jury to find an interstate nexus with the payment from Puerto Rico.

Commissioner White and Businessperson Hendricks move for a judgment of acquittal on

the honest services wire fraud conviction. They argue we erred by answering Jury Question 3 and

the United States did not sufficiently show an interstate nexus. We disagree.

The Supreme Court through Rule 29 requires us to grant a motion for acquittal if "the

evidence is insufficient to sustain a conviction."[53] We "must view the evidence and the inferences

logically deducible therefrom in the light most favorable to the government."[54] And we may only

disrupt a jury verdict "when the record contains no evidence, regardless of how it is weighted,

from which the jury could find guilt beyond a reasonable doubt[.]"[55] Commissioner White and

Businessperson Hendricks argue the United States failed to introduce evidence the wire transfer

charged in the indictment (Mr. Whitaker's $5,000 transfer to Businessperson Hendricks's company's bank account) passed through interstate commerce. Not so.

Witness Herbert Vega-Lopez – manager of the wire transfer department at Businessperson Hendricks's bank – testified the $5,000 transaction passed through servers in Puerto Rico on its way to the Virgin Islands. Bank manager Vega-Lopez's testimony provided ample basis for the jury to conclude Commissioner White and Businessperson Hendricks committed wire fraud. We deny their motion for acquittal, finding sufficient evidence to sustain their convictions.

## C.  We deny a new trial due to the uncontradicted evidence of guilt for wire fraud.

Commissioner White and Businessperson Hendricks also move for a new trial. We deny their motion.

The Supreme Court through Rule 33(a) allows us to "vacate any judgment and grant a new trial if the interest of justice so requires."[56] Our colleagues counsel we may grant a new trial under Rule 33 to cure errors in jury instruction "of sufficient magnitude."[57] But our Court of Appeals disfavors Rule 33(a) motions, holding we may only grant retrial if we "believe[] that 'there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'"[58] In evaluating a Rule 33 motion, we "do[] not view the evidence favorably to the Government, but instead exercise[] [our] own judgment in assessing the Government's case."[59]

We carefully evaluated Jury Question 3. We reviewed the caselaw and shared it with counsel while the jury awaited a response. No counsel objected to the cited recent caselaw. We twice told the jury we could not decide the question of fact as part of Jury Question 3. We also told the jury we saw a legal question relating to the nature of a wire transfer. We also knew Jury Question 3 focused on the messaging between and among Commissioner White, Businessperson Hendricks and David Whitaker over WhatsApp, texting, or phone calls unrelated to the $5,000

payment from Puerto Rico. We find our instruction in response to Jury Question 3 does not warrant a new trial.

And the evidence of an interstate wire transaction is uncontradicted. Commissioner White and Businessperson Hendricks offer no basis for us to conclude the jury wrongly convicted them of honest services wire fraud based on a question concerning messaging between the Defendants and David Whitaker. We have no basis to find Commissioner White or Businessperson Hendricks have been wrongly convicted. The United States introduced unimpeached evidence the $5,000 bribe payment passed between servers in the Virgin Islands and Puerto Rico, thus constituting an interstate transaction. Defense counsel's cross-examination of Bank manager Vega-Lopez did not touch on the core of his testimony the transaction passed through servers in Puerto Rico. Nor did Commissioner White or Businessperson Hendricks present evidence the transaction did not cross territorial lines. The United States' evidence remains uncontradicted. And our jury instruction, which addressed instant communication technologies like text messages and WhatsApp, could not have confused the jury, especially considering our response to Jury Question 2, about their duty to weigh evidence in determining whether the bank transfer involved more than just St. Thomas. We deny Commissioner White's and Businessperson Hendricks's motions for a new trial.

### III.    Conclusion

We read Jury Question 3 as including a question of law. The United States agreed. Commissioner White and Businessperson Hendricks did not. They objected to answering the question at all as invading on the jury's province. We agreed with Commissioner White and Businessperson Hendricks to not comment on whether there is common knowledge about WhatsApp and text messages and phone calls using servers outside the Virgin Islands. But we disagreed as to providing the jury with the definition of wire fraud as part of Jury Question 3.

The United States adduced uncontradicted evidence of the $5,000 bribery payment wired from Puerto Rico to St. Thomas. The jury found wire fraud in interstate commerce as shown in the undisputed wire transfer of the bribe from Puerto Rico to St. Thomas.

We deny Defendants' motions to acquit or for new trial on the honest services wire fraud convictions.

---

[1] ECF 1 at 3–14, ¶¶ 9–38. Commissioner White and Businessperson Hendricks do not challenge their convictions for bribery concerning programs receiving federal funds. ECF 129; ECF 130; ECF 131.

[2] *U.S. v. Andrews*, 681 F.3d 509, 518 (3d Cir. 2012) (quoting *U.S. v. Antico*, 275 F.3d 245, 261 (3d Cir. 2001), *abrogated on other grounds*, *Skilling v. U.S.*, 561 U.S. 358 (2010)).

[3] *See id.* (quoting 18 U.S.C. § 1346).

[4] ECF 1 at 3, ¶ 9.

[5] ECF 122 at 114.

[6] *Id.* at 106–07.

[7] *Id.*

[8] *Id.* at 110–11.

[9] *Id.* at 111–14.

[10] *Id.* at 112, 114.

[11] *See id.* at 116–18.

[12] *Id.* at 117.

[13] *Id.*

[14] *Id.* at 117–18.

[15] *Id.* at 118.

[16] *Id.* at 118.

[17] *See* ECF 123 at 73–139, 150–64.

[18] ECF 103; ECF 123 at 178.

[19] ECF 123 at 180.

[20] *See id.* at 189 (court's statement) ("I got it. I'll say, [i]nterstate commerce, as used in – interstate commerce includes commerce between one State, Territory, Possession, or the District of Columbia and other States, Territory, Possession –."); *id.* (statement of Mr. White's attorney) ("Understand. That's it."); *id.* (statement of Mr. Hendricks's attorney) ("That's it, Your Honor.").

[21] *Id.* at 190–91.

[22] ECF 105; ECF 124 at 4.

[23] ECF 124 at 5.

[24] *Id.* at 5–6 ("Judge, I vehemently disagree. The question calls for a fact. That is completely within the purview of the jury. The only thing the Court should do is tell the jury, we cannot answer that question.").

[25] *See id.* at 6 ("Your Honor, in essence, they have received the facts in this case and they've received the instructions previously provided by the Court and that's basically it. We should not give them anything else, Your Honor.").

[26] *See id.* at 7 (court's statement) ("Do you read the question as being – I am hooked up on is it common knowledge. Does it matter? The law is what wire fraud is. In other words, WhatsApp, et cetera, can be wire fraud. Okay. So no one – they would think – they're asking that question."); (statement of Commissioner White's counsel) ("That is what they're asking, Judge."); *id.* (court's statement) ("Yes. If that's what they're asking, I have to answer that.").

[27] *See id.* at 16–17.

[28] *See* ECF 124 at 15 ("Yes, sir, a case called United States v. Higgins. It's out of the district of Delaware citing United States versus Scarfo, Third Circuit 2022, and United States versus Andrews, Third Circuit 2012, Andrews and Scarfo."); *see also U.S. v. Higgins*, No. 22-44, 2025 WL 1695947 (D. Del. June 17, 2025); *U.S. v. Andrews*, 681 F.3d 509 (3d Cir. 2012).

[29] *See Andrews*, 681 F.3d at 528–29 (describing "fax [and] email" as interstate wire communications).

[30] *Id.* ("Andrews first alleges that the evidence on the wire fraud counts was insufficient because, although he asked Price to send bond documentation to Malone, he never asked Price to use interstate wire communications (*i.e., fax or email*).") (emphasis added); *see also id.* at 529 ("In

13

this case, the use of interstate wire communications was reasonably foreseeable. When Andrews asked Price, who was in New York, to send bond application documents to Malone, who was in the Virgin Islands, it was reasonably foreseeable that Price would send the documents *via email or fax*.") (emphasis added).

[31] *See Higgins*, 2025 WL 1695947 at *2 (citing *Andrews*, 681 F.3d at 528–29).

[32] Jury instructions should be considered in their totality. *See U.S. v. Jones*, 126 F. App'x 560, 565 (3d Cir. 2005) ("[W]hen we consider jury instructions we consider the totality of the instructions and not a particular sentence or paragraph in isolation" (quoting *U.S. v. Khorozian*, 333 F.3d 498, 507–08 (3d Cir. 2003)).

[33] *See* ECF 124 at 11.

[34] *Id.* at 7 ("However, the way they phrase it, they are asking a mixed question of fact and law, and that's why I think it's appropriate to – I don't think we should go too far into answering it because it is not a direct question of law, but because it's a mixed question of law, I think it is appropriate for Your Honor to answer the legal part, not the fact part . . . .").

[35] *See id.* at 5–7, 9–12, 15–16.

[36] *Id.* at 10.

[37] *Id.* at 7.

[38] *Id.* at 9 ("So they have to decide factually whether these communications were interstate[.]")

[39] ECF 124 at 16 (emphasis added). We erred in misreading the jury's handwritten question back to the jury different than the foreperson wrote it and as we discussed during deliberations. *Compare* ECF 105 (Jury Question 3) ("Is it common knowledge that text messages, WhatsApp, or phone calls between individuals in the U.S. Virgin Islands use networks, systems, or servers outside the U.S. Virgin Islands, and constitute a wire transaction in interstate commerce?"), *with* ECF 124 at 16 (our misreading) ("Is it common knowledge that text messages, WhatsApp or phone calls *when* individuals in the U.S. Virgin Islands use networks, systems or servers outside the U.S. Virgin Islands[,] and constitute a wire transaction in interstate commerce[?]" (emphasis added)).

Neither Defendant nor the United States objected to our misreading the handwritten Jury Question 3. They also did not raise the issue in the pending Motion nor during oral argument.

[40] *Id.* at 16–17.

[41] ECF 1 at 13, ¶ 38.

[42] *See* ECF 124 at 17.

[43] ECF 115, ECF 129.

---

[44] ECF 118, ECF 131.

[45] *See U.S. v. Carter*, 966 F. Supp. 336, 340 (E.D. Pa. 1997) ("[Several] of the grounds advanced by [the Defendant] clearly are not properly considered for a Rule 29 motion for judgment of acquittal because they challenge the Court's . . . jury instructions instead of the sufficiency of the evidence. A Rule 33 motion for a new trial is the more appropriate method for addressing the allegedly . . . improper jury instructions").

[46] *See* ECF 124 at 5–7, 9–12.

[47] *See U.S. v. Gaudin*, 515 U.S. 506, 513 (1995) ("In criminal cases . . . the judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions").

[48] *See Miller v. Fenton*, 474 U.S. 104, 113–15 (1985) (discussing factors the Court considers in "label[ling] an issue a 'question of law,' a 'question of fact,' or a 'mixed question of law and fact'"); *Quercia v. U.S.*, 289 U.S. 466, 469 (1933) (describing the federal trial judge as "the governor of the trial . . . and of determining questions of law").

[49] *Douglas v. Owens*, 50 F.3d 1226, 1233 (3d Cir. 1995).

[50] *Id.* (quoting *McPhee v. Reichel*, 461 F.2d 947, 950 (3d Cir. 1972)).

[51] *See* ECF 105.

[52] *Liberty Salad, Inc. v. Groundhog Enters., Inc.*, No. 17-226, 2019 WL 1303829, at *4 (E.D. Pa. Mar. 20, 2019) (noting in the context of interlocutory appeals "a 'question of law' refers to 'a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine.'" (quoting *Arenholz v. Bd. of Trs.*, 219 F.3d 674, 676 (7th Cir. 2000))).

[53] Fed. R. Crim. P. 29(a).

[54] *U.S. v. McNeill*, 887 F.2d 448, 449–50 (3d Cir. 1989).

[55] *Id.* at 450 (quoting *Brandom v. U.S.*, 431 F.2d 1391, 1400 (7th Cir. 1970), *cert. denied*, 400 U.S. 1022 (1971)).

[56] Fed. R. Crim. P. 33(a).

[57] *U.S. v. Ortiz*, No. 22-381, 2025 WL 449534, at *2 (E.D. Pa. Feb. 10, 2025) (quoting *U.S. v. Brown*, No. 90-144, 1991 WL 7378, at *4 (E.D. Pa. Jan. 22, 1991)).

[58] *U.S. v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (quoting *U.S. v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994)).

[59] *Id.*